# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD KIMBRO, | CASE NO. 1:11-cv-00957-GBC (PC) |
| Plaintiff, | ORDER DISMISSING ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED |
| v. | |
| CHEN, et al., | Doc. 14 |
| Defendants. | |

**I. Procedural History, Screening Requirement, and Standard**

On June 13, 2011, Plaintiff Richard Kimbro ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging failure to provide morphine, methadone, and treat his kidney stone condition from 2005 through 2011. Compl. at 7 of Part 1 & 53, 70-71, 79 of Part 2 of Complaint, Doc. 1. Plaintiff named forty-seven (47) Defendants, who were employed by the Appeals Branch of California Department of Corrections ("CDCR"); Kern Valley State Prison ("KVSP"); Salinas Valley State Prison ("SVSP"); Mule Creek State Prison ("MCSP"); High Desert State Prison ("HDSP"); and Corcoran Substance Abuse and Treatment Facility ("CSATF"). *See id.* at 1-3. On July 13, 2012, the Court issued a screening order, dismissing Plaintiff's complaint, with leave to amend. Doc. 11. On August 17, 2012, Plaintiff filed an amended complaint, only naming Dr. Chen, employed at KVSP, and Dr. John Doe, employed at CSATF. Doc. 14.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

Court must dismiss a complaint, or portion thereof, if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678.

While prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, the pleading standard is now higher, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Under § 1983, plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by those acting under color of state law. *E.g.*, *Patel v. Kent School Dist.*, 648 F.3d 965, 971 (9th Cir. 2011); *Jones*, 297 F.3d at 934. For each defendant named, plaintiff must show a causal link between the violation of his rights and an action or omission of the defendant. *Iqbal*, 556 U.S. at 678-79; *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). There is no respondeat superior liability under § 1983, and each defendant may only be held liable for misconduct directly attributed to him or her. *Iqbal*, 556 U.S. at 677-79; *Ewing*

*v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009).

## II. Plaintiff's Amended Complaint

In Plaintiff's amended complaint, he names Dr. Chen, employed at KVSP, and Dr. John Doe [unidentified defendant], employed at CSATF. Am. Compl. at 1-3, Doc. 14. In Plaintiff's amended complaint, he refers to the prior records filed in his original complaint. *Id.* at 3.

On September 20, 2009, Plaintiff was transferred to CSATF. *Id.* at 4. At that time, he was under chronic care and pain management therapy for kidney stone surgeries from July 2008 and September 2009. *Id.* After the surgeries, Plaintiff had problems with infections and had stints removed. *Id.* The issues from those surgeries are being filed in Sacramento. *Id.* Plaintiff is also under chronic care for Hepatitis C, degenerative disc disease, arthritis, and left knee [sic]. *Id.* In May 2006, Donna Kalavokalani, MD wrote a pain management assessment. *Id.* Her recommendations were followed from May 2006 to July 2010. *Id.* All doctors prior to Dr. Chen agreed with those recommendations. *Id.*

On December 1, 2009, Plaintiff felt pain, noticed blood in his urine, and his left knee was bothering him. *Id.*

On December 21, 2009, Plaintiff was seen by Dr. John Doe [unidentified defendant]. *Id.* By that time, the problems with his kidneys and urinary tract had worsened and was infected. *Id.* Plaintiff knew this because of past experiences with bladder and kidney infections. *Id.* Plaintiff explained this to Dr. John Doe and requested a urine test to check for infection. *Id.* They also discussed his knee and an order for a knee brace was done at that time. *Id.* Dr. John Doe refused to change his medication. *Id.* Dr. John Doe refused to discuss his chronic care kidney stone situation and would not give him a urine test for possible infection. *Id.* at 4-5. Dr. John Doe said he only had ten minutes per inmate and told him to put in a separate sick slip and come back. *Id.* at 5. In Plaintiff's exhibit attached to his original complaint, Dr. John Doe stated that Plaintiff claims he is not adequately controlled on Tylenol and wants morphine. Part 2 of Compl. at 53, Doc. 1. Dr. John Doe declined to order morphine. *Id.*

On December 25, 2009, Plaintiff became so ill he was transferred to the hospital for a kidney, urinary tract, and bladder infection. Am. Compl. at 5, Doc. 14. The infection spread to his heart, he

was in the hospital ten days, and was told he could have died if he had not gone to the hospital. *Id.* The infection could have been prevented if Dr. John Doe had ordered a urine test. *Id.* After his return from the hospital, his medication was changed to methadone, he was placed on a more diligent urine testing plan, and he was given a knee brace. *Id.*

On July 20, 2010, Plaintiff was transferred to KVSP. *Id.* His chronic care medications were continued for a few weeks until he could see a doctor, but then they began to expire. *Id.* He was taking methadone 10 mg and Gabapenton 1800 mg twice a day. *Id.* at 5-6. The methadone was for chronic pain and the Gabapenton was prescribe for nerve damage at Mule Creek Prison. *Id.* He has been on narcotic pain medication for pain management since 2006. *Id.* at 6. Dr. Chen forced Plaintiff to become very ill from forced withdrawal without following proper procedures. *Id.*

On August 16, August 18, and August 26, 2010, Plaintiff was seen by Dr. Chen and given a urinalysis test, which showed blood in his urine. *Id.* Dr. Chen refused to discuss pain management issues and would only discuss the kidney stones. *Id.* On September 8, 2010, Plaintiff had a renal ultrasound, which showed no stones in his urinal tract, so Dr. Chen refused to discuss pain issues. *Id.* at 6-7. Dr. Chen accused Plaintiff of self-infliction on his penis, causing blood in his urine. *Id.* at 7. On December 1, 2010, Plaintiff had a CT scan, which showed kidney stones in both kidneys. *Id.* Dr. Chen refused to discuss pain management, discuss his knee problem, or look at x-rays. *Id.*

On January 12, 2011, Plaintiff was made to stand in a cage in medical for over an hour on his bad knee. *Id.* On January 23, 2011, Plaintiff was found guilty of a rules violation report for threatening non-custody staff. *Id.* at 7, 17-20. Plaintiff was assessed a thirty date forfeiture of credits. *Id.* at 19.

Plaintiff filed a complaint about the arsenic in the water. *Id.* at 7. Plaintiff tried to discuss the concerns with Dr. Chen because Plaintiff must drink three times the normal amount of water to flush his kidneys. *Id.* at 7-8. Dr. Chen told Plaintiff to take his chances with the arsenic water or live with the pain from the stones. *Id.* at 8. Dr. Chen refused to discuss an alternate water source or medical transfer due to arsenic water even though Plaintiff developed a serious skin problem and a cyst on his liver while at KVSP. *Id.* Plaintiff has been depressed and on suicide watch three times in two years. *Id.* He is still ill. *Id.*

For relief, Plaintiff seeks to be seen by new doctors and specialists with new recommendations, including pain management; damages of $250,000 and $25,000 from each defendant; and dismissal of the 115 for physical threat against Dr. Chen. *Id.* at 3.

### III. Legal Standard and Analysis for Plaintiff's Claims

**A. Eighth Amendment Deliberate Indifference to Serious Medical Need and Linkage**

**1. Legal Standard**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (citing *McGuckin* at 1060). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. *McGuckin* at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

Under § 1983, Plaintiff must link the named defendants to the participation in the violation at issue. *Iqbal*, 556 U.S. at 678-79; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010); *Ewing*, 588 F.3d at 1235; *Jones*, 297 F.3d at 934. Liability may not be imposed on supervisory personnel under the theory of respondeat superior, *Iqbal*, 556 U.S. at 676; *Ewing*, 588 F.3d at 1235, and administrators may only be held liable if they "participated in or directed the

violations, or knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr*, 652 F.3d at 1205-08; *Corales*, 567 F.3d at 570; *Preschooler II v. Clark County School Board of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007); *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff may not seek to impose liability on defendants merely upon position of authority, based on vague or other conclusory allegations. Plaintiff fails to allege sufficient facts to support a plausible claim based on the knowing disregard of a substantial risk of harm to Plaintiff's health. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner, and *Estelle*, 429 U.S. at 106; *McGuckin*, 974 F.2d at 1059, and isolated occurrences of neglect do not rise to the level of an Eighth Amendment violation, *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

**2. Analysis**

Plaintiff fails to state a cognizable Eighth Amendment claim. Plaintiff alleges failure to provide morphine and methadone for pain from his kidney stone condition from 2005 through 2011.

Neither an inadvertent failure to provide adequate medical care, nor mere negligence or medical malpractice, nor a mere delay in medical care, <u>nor a difference of opinion over proper treatment</u>, constitutes an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105-06 (emphasis added); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'r*, 766 F.2d 404, 407 (9th Cir. 1984). Moreover, <u>the Constitution does not require that prison doctors give inmates every medical treatment they desire</u>. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added). To establish a constitutional right to treatment under the Eighth Amendment, an inmate must show that a physician or other health care provider exercising ordinary skill and care at the time of observation would conclude with reasonable medical certainty that: (1) the prisoner's symptoms evidenced a serious disease or injury; (2) the disease or injury was curable or could be substantially alleviated; and (3) the potential for harm to the prisoner by reason of delay or denial of care would be substantial. *Id.* "The courts will not intervene upon allegations of mere negligence, mistake or <u>difference of opinion</u>." *Id.* at 48; *see also Sanchez*, 891 F.2d at 242 (emphasis added).

Plaintiff alleges that Dr. Chen and Dr. John Doe's medical opinions differed from Dr. Kalavokalani's opinion from 2006. A difference of medical opinion does not state a claim for deliberate indifference. *See Estelle*, 429 U.S. at 105-06.

Plaintiff alleges it was Dr. Chen and Dr. John Doe's medical opinion that Plaintiff did not need morphine or methadone for his kidney stone condition. Plaintiff states Dr. Chen accused him of self-inflicting injury on himself in order to receive stronger pain medication. Plaintiff says he personally knows he is entitled to pain medication because of his medical history. Plaintiff is not permitted to dictate his medical treatment. *Bowring*, 551 F.2d at 47-48. <u>As a matter of law, differences of opinion between prisoner and prison doctors fails to show deliberate indifference to serious medical needs</u>. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (emphasis added). Plaintiff also alleges knee pain but was given a knee brace.

Plaintiff alleges Dr. John Doe should have given him a urine test during the ten minute exam on December 21, 2009, and that would have prevented Plaintiff from going to the hospital on December 25, 2009. However, Dr. John Doe told Plaintiff to submit a call slip to return, since he only was scheduled for a ten minute appointment. Neither negligence nor gross negligence is actionable under § 1983 in the prison context. *See Farmer*, 511 U.S. at 835-36 & n.4; *Wood*, 900 F.2d at 1334 (gross negligence insufficient to state claim for denial of medical needs to prisoner). Nor is negligence actionable under § 1983 outside of the prison context. The Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). The Eighth Amendment's prohibition of cruel and unusual punishment applies to prison medical care (and the Fourteenth Amendment's right to due process applies to jail medical care); however, an Eighth Amendment or Fourteenth Amendment violation only occurs if there is deliberate indifference to a known risk to an inmate's serious medical condition.

Plaintiff's allegations do not show that a named defendant actually knew and disregarded a known serious risk, pursuant to *Iqbal*, 556 U.S. at 678-79; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21; *Ewing*, 588 F.3d at 1235; and *Jones*, 297 F.3d at 934.

Thus, even with liberal construction, Plaintiff's complaint does not allege cruel and unusual

punishment, failure to protect, or deliberate indifference to a medical need because neither mere negligence or medical malpractice, nor a mere delay in medical care, <u>nor a difference of opinion over proper treatment</u>, constitutes an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105-06 (emphasis added); *Sanchez*, 891 F.2d at 242; *Shapley*, 766 F.2d at 407. Moreover, the Constitution does not require that prison doctors give inmates every medical treatment they desire. *Bowring*, 551 F.2d at 47-48. The complaint will be dismissed for failure to state a claim upon which relief may be granted.

## B. Eighth Amendment Conditions of Confinement

Plaintiff again alleges there is high levels of arsenic in the water at KVSP.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). But this is not a mandate for comfortable prisons. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Indeed, prison conditions may be both restrictive and harsh without violating the Constitution. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Within this construct, however, prison officials must provide food, clothing, shelter, sanitation, medical care, and personal safety. *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment when these two components are met: (1) the deprivation alleged must be objectively sufficiently serious; and (2) the prison official possesses a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297-98 (1991)). In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, courts consider the circumstances, nature, and duration of the deprivation. The more basic the need, the shorter the time it can be withheld. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Substantial deprivations of shelter, food, drinking water, or sanitation over an extended time are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *Id.* at 732-33.

The exposure to toxic substances can support a claim under § 1983. *See Wallis v. Baldwin*, 70 F.3d 1074, 1076–77 (9th Cir. 1995) (exposure to asbestos). However, Plaintiff's speculative and conclusory allegations fail to state a claim that the elevated levels of arsenic in the water is sufficiently serious as to constitute a risk of harm to Plaintiff's health. Plaintiff has alleged that he

has various adverse health conditions attributable to the exposure, but provided no facts that would enable the Court to conclude that this is anything more than unqualified speculation by an individual and not based on medical or other training or science. The complaint lacks specific factual allegations connecting each individual defendant to the conduct described. The allegations do not make clear what role each defendant played in the process and how each caused or failed to correct the alleged harm and how they had the capacity to correct it.

Accordingly, the Court finds that Plaintiff fails to state a cognizable claim for relief under § 1983 based upon Eighth Amendment conditions of confinement.

### C. Personal Participation and Doe Defendants

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Jones*, 297 F.3d at 934. The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. *Iqbal*, 129 S. Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Id.* at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, plaintiff must demonstrate that each defendant, through his or her own individual actions, violated plaintiff's constitutional rights. *Id.* at 1948–49.

Plaintiff fails to allege any facts personally linking the Dr. John Doe defendant to the alleged rights violations. There is no evidence that this defendant personally participated in the events alleged in Plaintiff's complaint, and a doe defendant cannot be held liable based solely upon a supervisory position. Plaintiff cannot proceed against this doe defendant unless he alleges how each personally violated, or knowingly directed a violation of his constitutional rights.

Moreover, "[a]s a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980).

### D. Claims Arising from Inmate Appeals Decisions

Plaintiff makes allegations against defendants from their involvement in the inmate appeals process. Plaintiff cannot pursue any claims against staff for violation of the Due Process Clause relating to their involvement in the administrative review of his inmate appeals. The existence of an

inmate appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the appeals process was deficient. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). To state a claim under § 1983, Plaintiff must demonstrate personal involvement in the underlying violation of his rights, *Iqbal*, 129 S. Ct. at 1949; *Jones*, 297 F.3d at 934, and liability may not be based merely on Plaintiff's dissatisfaction with a decision on a subsequent administrative review of a grievance of that underlying violation, *Ramirez*, 334 F.3d at 860; *Mann*, 855 F.2d at 640.

### E. Violation of State Prison Rules and Regulations

Plaintiff alleges various violations of state prison rules and regulations. Those violations, without more, do not support any claims under § 1983. *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001); *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997). Only if the events complained of rise to the level of a federal statutory or constitutional violation may Plaintiff pursue them under § 1983. *Patel*, 648 F.3d at 971; *Jones*, 297 F.3d at 934. Thus, complaints that prison officials violated state regulations regarding the inmate appeals process or prison disciplinary proceedings, for example, will not support a claim for denial of due process under federal law.

### F. Due Process

On January 23, 2011, Plaintiff was found guilty of a rules violation report for threatening non-custody staff. Plaintiff was assessed a thirty date forfeiture of credits.

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To state a claim, Plaintiff must first identify the interest at stake. *Austin*, 545 U.S. at 221. Liberty interests may arise from the Due Process Clause or from state law. *Id*. The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, *id.* at 221-22, and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue, *id.* at 222-23 (citing *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995)). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Austin*, 545 U.S. at 221

(citing *Sandin*, 515 U.S. at 484); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

As previously stated, the administrative review of Plaintiff's appeal grieving the violation of his rights relating the adjudication of his disciplinary charge provides no basis for liability. *Ramirez*, 334 F.3d at 860; *Mann*, 855 F.2d at 640.

Plaintiff's due process claims fail on two grounds. First, Plaintiff was assessed a credit forfeiture as a result of being found guilty of the charge. State prisoners cannot challenge the fact or duration of their confinement in a § 1983 action and their sole remedy lies in habeas corpus relief. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). Known as the favorable termination rule, this exception to § 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement - either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Dotson*, 544 U.S. at 81. Thus, "a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82.

Plaintiff does not allege that he succeeded in overturning the guilty finding or that his credit loss was otherwise restored. If that is so, Plaintiff is barred from litigating in this action any claim which, if successful, would invalidate the disciplinary finding which led to the credit forfeiture. Within the purview of the favorable termination rule would be any due process challenge to the issuance of the RVR or to the disciplinary hearing, as a finding in Plaintiff's favor would necessarily invalidate the finding of guilt.

Second, even if Plaintiff's claim is not barred by the favorable termination rule because he did not ultimately lose time credits, his due process claim still fails. Plaintiff has not identified the existence of a protected liberty interest. Neither the reduction in Plaintiff's privileges or his classification score implicates a protected interest, and the absence of an identifiable interest precludes the finding of a viable due process claim. *Austin*, 545 U.S. at 221.

Accordingly, the Court finds that Plaintiff fails to state a cognizable claim for relief under § 1983 based upon the inmate appeals process, violations of state rules and regulations, and due

1  process.

## IV. Conclusion and Order

Plaintiff's amended complaint fails to state any claims upon which relief may be granted. Plaintiff was previously notified of the deficiencies in his claims and granted leave to amend, but he was unable to cure the deficiencies. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Based on the record in this case, the Court finds that further leave to amend is not warranted.

Accordingly, pursuant to 28 U.S.C. §§ 1915A and 1915(e), the Court HEREBY ORDERS that this action be DISMISSED, with prejudice, based on Plaintiff's failure to state any claims upon which relief may be granted under § 1983.

IT IS SO ORDERED.

Dated:    December 17, 2012

UNITED STATES MAGISTRATE JUDGE